In re WISCONSIN CENT. RY. CO.

No. 17194.

District Court, D. Minnesota, Fourth Division.

Sept. 26, 1947.

Alfred E. Rietz, of St. Paul, Minn., and Nye F. Morehouse and Warren Newcome, both of Chicago, Ill., for petitioner.

James E. Dorsey, Charles F. Noonan, and Donald West (of Messrs. Dorsey, Coleman, Barker, Scott & Barber), all of Minneapolis, Minn., for trustees of the debtor company.

NORDBYE, District Judge.

This matter comes before the Court upon the petition of the Chicago and North Western Railway Company for an order requiring the Trustees of the Wisconsin Central Railway Company to comply with the arbitration clause in the ore pooling contract dated March 26, 1934. The North Western Railway Company was permitted to intervene in these proceedings for the sole purpose of presenting this petition.

The petitioner proceeds upon the theory that it is mandatory upon the Court to require the Trustees to comply with the arbitration clause in the ore pooling contract under Title 9 U.S.C.A. §§ 2 and 4. Section 2 reads as follows:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Petitioner contends that this section is self-executing and that Congress therein has enunciated a rule of substantive law; that the ore pooling contract evidences a transaction involving commerce; and that Congress was acting within the scope of its constitutional authority when it declared all such arbitration contracts to be valid, irrevocable and enforceable. The petitioner, therefore, urges that this Court should proceed to exercise its jurisdiction over the controversy between these parties and should require the Trustees to submit the controversy to arbitration in conformance with the provisions of the ore pooling contract. The Trustees, however, urge that Section 2 merely relates to the remedy

which is provided for in the subsequent sections of the title. After due consideration, it is my opinion that Section 2 does not lay down a rule of substantive law which is self-executing; it merely sets forth a rule which is to be applied in situations arising under Sections 3 or 4 of the Act.

The action brought by the Trustees in Bankruptcy of the Wisconsin Central Railway Company to recover the amounts alleged to be due from the North Western Railway Company under the ore pooling contract is now pending in State Court. Both the petitioner and the Wisconsin Central Railway Company are Wisconsin corporations. In that no action is pending in this Court, Section 3 of the Act, which pertains to procedure in any suit or proceeding brought in any of the courts of the United States. is not applicable. The only question, therefore, which requires an extended discussion is the applicability of Section 4 of the Arbitration Act herein. The pertinent portions of Section 4 read:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

Under the Judicial Code, § 24(19), 28 U. S.C.A. § 41(19), the District Courts have jurisdiction of all matters and proceedings in bankruptcy. Under the Bankruptcy Acts of 1841 and 1867, the Circuit and District Courts of the United States had concurrent jurisdiction of suits by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against the assignee regarding any property or right of property of the bankrupt trans-ferable to, or vested in, the assignee. Bardes v. First Nat. of Hawarden, Iowa,. 178 U.S. 524, 531, 20 S.Ct. 1000, 44 L.Ed. 1175. But in the Bankruptcy Act of 1898, this provision was entirely omitted and the restricted provisions of Section 46, Title 11 U.S.C.A., substituted. This section provides:

"a. The United States district courts. shall have jurisdiction of all controversies at law and in equity, as distinguished from. proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted,. unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title."

It is urged by petitioner that Section 46, sub. a, only refers to suits by the Trustees against adverse claimants and not to suits of adverse claimants against the Trustees. Hence, it is urged that if a suit were brought on petitioner's counterclaim for alleged over-payment under the ore pooling contract, as asserted in the action pending in State Court, Section 46, sub. a, would not apply and diversity of citizenship between the Trustees, citizens of Minnesota, and the petitioner would be determinative of jurisdiction under Section 24 of the Judicial Code. Reference is made to certain language in Ex Parte Baldwin, 291 U.S. 610, 617, 54 S.Ct. 551, 554, 78 L.Ed. 1020, which may seem to support petitioner's construction of Section 46, sub. a, in this regard. That case involved an application by a trustee in bankruptcy for a writ of mandamus to compel the District Court to accept jurisdiction on removal of a suit pending in a State Court brought against him as such trustee and affecting the title and possession of property of

which he had possession as part of the bankruptcy estate. The court held that a writ of mandamus would not issue in that the bankruptcy court had jurisdiction to enjoin the State Court suit which would interfere with the possession of the bankrupt's property, and the court stated that this power expressly reserved in the bankruptcy court had not been affected by Section 46, sub. a, which "relates only to suits in which the trustees are plaintiffs." But it seems quite evident that the court merely intended to point out that Section 46, sub. a, in no way limited the rights of the bankruptcy court to protect property in its possession. This seems apparent from the sentence immediately following that quoted above, which reads: "It [Section 46, sub. a] has no restrictive effect on the right of the trustees or receivers to protect their possession or title through proceedings in the bankruptcy court." No question was presented to the court as to whether Section 46, sub. a, pertained to suits by trustees only, or as to suits by the adverse claimants against the trustees as well. It would seem that a reading of the statute indicates that the intent was to cover suits by either party against the other. The earlier statutes admittedly pertain to suits by assignees in bankruptcy against adverse claimants and to suits by adverse claimants against the assignees in bankruptcy. The amendment of 1898 markedly limited the jurisdiction of the court in plenary suits involving "property acquired or claimed by the trustees." "Property acquired" by the receivers or trustees is usually only subject to litigation at the instance of a suit by adverse claimants against the trustees. In any event, no good reason is suggested why any distinction should be made in determining the jurisdiction of the United States courts as between suits by trustees and suits by adverse claimants against the trustee in bankruptcy. Hatch v. Curtin, C. C.Mass., 146 F. 200; dictum In re Mac-Dougall, D.C.N.D.N.Y., 175 F. 400, at page 405. Therefore, if the petitioner did bring an action in this Court on its counterclaim against the trustees on the theory that it had overpaid them on the ore pooling contract, it would seem that there is real doubt that the Court would have jurisdiction in view of the lack of diversity as between the bankrupt and the adverse claimants.

Section 46, sub. b, grants jurisdiction to this Court to entertain a suit brought by the Trustees involving moneys claimed to be due under the ore pooling contract, subject to the condition of the consent of the defendant. It is urged by the petitioner, therefore, that under Section 46, sub. b, this Court has jurisdiction of the present controversy between the parties and that under Section 4, Title 9, U.S.C.A., it is mandatory upon this Court to direct the parties to proceed to arbitration in accordance with the terms of the agreement. It is the Trustees' position that this Court does not have jurisdiction because the jurisdiction of the Court is conditioned upon the institution of a suit by the Trustees and the consent of the defendants. Before jurisdiction arises, the consent of both parties, so to speak, must be in existence.

██ The question presented is a novel one. But after a rather protracted consideration, I have concluded that this Court also lacks jurisdiction under Section 46, sub. b, and therefore cannot order the arbitration which petitioner seeks. The difficulty seems to arise from endeavoring to determine on the showing herein whether this Court "would have jurisdiction * * * of the subject matter of a suit arising out of the controversy between the parties." Section 46, sub. b, grants jurisdiction (in the absence of the required citizenship diversity) upon the happening of two conditions: First, there must be the bringing of a suit by the Trustees against the adverse claimant, and second, there must be a consent to the jurisdiction of the court by the adverse claimant. Until the happening of these two conditions precedent, jurisdiction does not vest.

In the instant case, the first condition precedent to jurisdiction—the consent of the plaintiff Trustees as evidenced by the bringing of a suit in this Court—does not exist. The Trustees steadfastly refuse to bring an action in this Court and already have indicated an intention not to do so in the future. They have filed their action

and are proceeding in State Court, from which this Court has held the case cannot be removed. Whitman v. Chicago & North Western Ry. Co., D.C., 70 F.Supp. 9. They cannot be forced to try this controversy in this Court. So in actuality this Court never would have jurisdiction over the subject matter of this action under the bankruptcy statute. To presume such jurisdiction or the existence of any of the jurisdictional requirements would ignore the actual situation before the Court and substitute fiction for reality. Nothing in the Arbitration Act justifies such a substitution. And Section 4 of the Arbitration Act specifically turns on whether the Court would have jurisdiction over the controversy between the parties. Consequently, jurisdiction required for arbitration over this controversy seems lacking at the threshold.

Petitioner contends that, under Section 4 of the Arbitration Act, the bringing of an action must be presumed and that the existence of a pending suit is the test of the Court's jurisdiction. But the presumption of an existing suit can be made only if the Court has jurisdiction of the subject matter under a statute, for Section 4 specifically requires that the Court possess jurisdiction over the subject matter. And whether the Court possesses jurisdiction over the subject matter depends upon statutory grant. Obviously, the Court cannot presume a statutory grant of jurisdiction over the subject matter in the face of a specific requirement that it exists only upon the happening of two conditions, which have not been fulfilled. Such a presumption would render inoperative and superfluous the Section 4 requirement of jurisdiction over the subject matter, would run contra to the plain meaning of the statute, and would negate Section 4's requirements that the statutory jurisdictional requirements be satisfied in actuality, not presumptively. It would assume the answer to the question which Section 4 requires to be determined upon actual fact— does the Court possess jurisdiction over the subject matter under the statute? It would abolish in bankruptcy matters the test which Section 4 contemplates as the basic determiner of the right to arbitration

and thus would permit arbitration in situations for which Congress did not intend it. Moreover, such a presumption here also would distort the intent and purpose of Section 46, sub. b, for it would obviate the need of the Trustees' consent, which, as this Court noted in Whitman v. Chicago & North Western Ry. Co., D.C., 70 F.Supp. 9, that statute requires.

The instant situation is not comparable to the question of jurisdiction over the subject matter of a controversy involving commerce, for instance, where diversity of citizenship exists and the other jurisdictional facts are present, for in such instances the statute creates the jurisdiction. The bringing of the suit merely vests the Court with power to determine the controversy where jurisdiction exists. The presumption that an action has been commenced does not satisfy the diversity requirement there as the bringing of an action satisfies the first part of the jurisdiction statute, Section 46, sub. b, here.

It is not reasonable to presume that Congress intended the mandatory provisions of Section 4 of the Arbitration Act to become applicable unless it clearly appears that the jurisdiction over the subject matter would exist in the United States Court. That is clear from the terms of Section 4. The admitted facts show that petitioner has been unable to invoke the jurisdiction of this Court. It attempted to obtain jurisdiction by removal of the action which the Trustees commenced in State Court when the jurisdiction of that Court was invoked to determine this controversy. On motion by the Trustees to remand, however, the matter was remanded to the State Court on the express grounds that this Court did not have jurisdiction over the case. The case now is on the State Court calendar awaiting trial. To rule now that this Court would have jurisdiction of the controversy is to ignore the realities of the situation and to assume that two conditions precedent to jurisdiction would be fulfilled. It seems highly improbable that Section 4 of the Arbitration Act was intended to clothe this Court with jurisdiction—power to act in enforcing arbitration—when this Court would not have jur-

isdiction to determine the basic controversy between the parties. That jurisdiction of the Federal Court must affirmatively appear is well settled. Jurisdiction is not presumed; rather the contrary. 35 C.J.S., Federal Courts, § 8. The burden rests upon petitioner to establish jurisdiction in this Court. This it has failed to do. Because the question of jurisdiction here depends entirely upon the consent of the Trustees, this Court should not distort the statute so that jurisdiction to enforce arbitration between the parties will be found to exist in a controversy of which this Court would have no jurisdiction to determine the dispute. In view of these premises, Section 46, sub. b, does not confer upon this Court any power which justifies enforcement of the arbitration agreement pursuant to the requirements of Section 4 of the Arbitration Act.

Petitioner now recognizes that if no jurisdiction exists under the statutes noted, then the Declaratory Judgment Act, 28 U.S.C.A. § 400, cannot confer jurisdiction here. Consequently, no discussion need be made of petitioner's original claim that the requisite jurisdiction to order arbitration could be obtained by the Court under the Federal Declaratory Judgment Act. Petitioner's present position appears to be in accord with the rules applicable to declaratory judgment proceedings.

The Court expresses no views as to the effect of the Minnesota Arbitration statute, M.S.A. § 572.01 et seq., and petitioner's right to require arbitration thereunder. The State Court is fully competent to determine that question when and if the controversy is submitted to it, and this Court does not believe it should under the circumstances take it upon itself to decide that question of state law.

In view of these premises, therefore, this Court does not possess the jurisdiction necessary to order arbitration pursuant to Section 4 of the Federal Arbitration Act. The petitioner's request for an order requiring the Trustees to arbitrate the contract controversy in question must be, and is, denied. It is so ordered.

An exception is allowed.